White, J.
The controversy arising on the record in this case is embraced in two general questions.
The first we will consider is, whether Curran, the plaintiff below, was, at the time he received the injury complained of, a gratuitous passenger.
We think he vjns not. The ticket called a “ drover’s pass ” entitled him to ride from Cleveland to Erie with his stock, and to return on a passenger train. A single consideration was paid to the company for this privilege and for the transportation of his stock, and the one service can no more be said to have been gratuitous than the other. It is true, the person using the ticket is referred to in the contract as “ riding free, ” and in the endorsement on the ticket it is called a “ free ticket; ” but' these expressions can, in fact, only mean that the holder was to be subjected to no additional charge, and that he was to pass free of the usual fare exacted of passengers. The writing “ O ” and the ticket were *12 delivered at the same time, and, together, constitute one contract.
The next question is, whether the stipulation in the contract exempting the company from all liability for negligence, constitutes a defence to the action.
In our opinion it does not. "We regard it as settled in this State, by former decisions, that no such stipulation would exonerate the company from responsibility as a common carrier for the loss of goods caused by its own negligence; and from the principle thus established we are not inclined to recede. Welsh v. Pittsburg, Fort Wayne and Chicago R. R. Co., 10 Ohio St. 65; Graham & Co. v. Davis & Co., 4 Ohio St. 362; Davidson v. Graham et al., 2 Ohio St. 131.
It is true, that common carriers are not insurers of the safety of passengers as they are of goods which they undertake to carry; but the principle of. law which forbids, their being allowed to exempt themselves from liability for the consequences of their negligence in respect to goods, applies with still greater force in the case of passengers.
The common law has a peculiar regard for human life; and for this reason exacts a greater degree of care in respect to it than in relation to any matter of mere property. Shear-man & Redf. on Negligence, § 24.
Carriers, of the class of the plaintiff in error, are creatures of legislation, and derive all their powers and privileges by grant from the public. They are created to effect public purposes, as well as to subserve their own interest. They are intended, by the law of their creation, to afford increased facilities to the public for the carriage of persons and property, and, in performing this office, they assume the character of public agents, and impliedly undertake to employ in their business the necessary degree of skill and care.
This obligation arises from the public nature of the employment, and is founded on the policy of the law.for the protection of the persons and property of the public, which must of necessity be committed, to a very great extent, to the care of public carriers.
In the case of the Philadelphia and Reading Railroad *13 Company v. Derby (14 How. R. 486) it was laid down that, “ when" carriers undertake to convey persons by the powerful but dangerous agency of steam, public policy and safety require that they should be held to the greatest possible care and diligence. And whether the consideration for such transportation be pecuniary or otherwise, the personal safety of passengers should not be left to the sport of chance or the negligence of Careless agents. Any negligence, in such cases, may well deserve the epithet of gross.” And in delivering the opinion in the case of the Steamboat New World et al. v. King (16 How. R. 474), Mr. Justice Curtis declared that the court desired to be understood as reaffirming “ that doctrine, as resting, not only on public policy, but on sound principles of law.”
Eecovery is allowed for the breach of this duty where no privity of contract exists between the injured passenger and the carrier. Thus, in Collett v. London and Northwestern Railroad Company (16 Q. B. R. 984), where a duty was cast by act of parliament upon a railway company to carry any officer of the post-office, whom the postmaster-general might elect, for which services the company was to be re- . numerated by the postmaster-general, and the plaintiff was the officer elected, and was injured by the defendants’ negligence in carrying him, it was held, that it was the defendants’ duty to carry the plaintiff with proper care and diligence, and for the breach of such duty, to the injury of the plaintiff, he might sue the companyin an action on the case, though there was no contract between him and the defendants, but the duty arose simply from the obligation imposed upon the defendants by the statute. Same case, cited in Shearman & Redf. on Negligence, note to § 261. And to the same effect is Nolton v. Western Railroad Co., 15 N. Y. 444; see, also, Marshall v. The York, Newcastle and Berwick Railroad Co., 2 C. B. (73 E. C. L.) 655.
Whether the general obligation resting on the company as to the care to be exercised in the management of its trains may be qualified by special contract in cases of gratuitous services rendered in the carriage of a passenger, or of goods, *14 is a question we are not called on to consider. Such cases are exceptional in their nature, and whether the fact that they do not practically contribute to furnish the standard by which the business is conducted should withdraw them from the operation of the general rule, is a question not raised in the case before us, and in respect to which we express no opinion.
It cannot be denied that pecuniary liability for negligence promotes care;' and if public carriers in conducting their business can graduate their charges so as to discharge themselves from such liability, the direct effect will be to encourage negligence by diminishing the motives for diligence.
In New York it has been held by the court of appeals, three judges dissenting, that a common carrier, in consideration of an abatement in whole or in part of his legalfare, may lawfully contract with a passenger that the latter will take upon himself the risk of damage from the negligence of agents and servants, for which the carrier would otherwise be liable. Bissell v. The New York Central R. R. Co., 25 New York, 442.
The contract in that case was similar to the one in the case now before us, and the railroad company was held not to be liable.
But in the case of the Pennsylvania Railroad Company v. Henderson (51 Penn. St. Rep. 315) it was decided by the supreme court of Pennsylvania, that such a contract for exemption from liability for negligence was void, as being against the policy of the law.
In that case it appeared that Henderson, on the trip on which he was killed, shipped some live-stock to Philadelphia and received a “ drover’s pass,” being a ticket given to the person in charge of stock, there being no charge for the ticket, and the freight on the stock being the same whether any person went with it or not.
Oh this ticket was the following endorsement: “ The person accepting this free ticket assumes all risks of accidents, and expressly agrees that the company shall not be liable under any circumstances, whether of negligence by its agents, *15 or otherwise, for any injury to the person, or for any loss or injury to the personal property of the party using this ticket.” In an elaborate opinion by Read, J., the late New York cases were reviewed and disapproved, and it was held that the contract imported by the endorsement was no excuse for negligence.
The former decisions of the supreme court of Pennsylvania on the subject of such agreements, accord with the former decisions of our own court; and the decision in the case of Henderson and the- decision we make in the present case are but the logical application of principles established in former cases.
If the distinction as to the different degrees of negligence should be recognized as applicable to this class of cases, a matter which has been questioned in some cases and denied in others, yet the act of negligence charged in this case, and which the jury must have found to have been proved, would, in its nature, clearly be an act of gross negligence.

Judgment affirmed.

Day, O..J., and Bbinkerhoff, Scott, and Welch, J.J., concurred.